IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. LUNKES and <br> JAMES A. LUNKES, <br><br> Plaintiffs-Appellants, <br> v. <br><br> Frances Gecker, not individually but as the <br> Chapter 7 trustee of the bankruptcy estates of <br> William J. Lunkes and James A. Lunkes, <br><br> Defendant-Appellee. | Case Nos. 09 C 4589 and 09 C 4694 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

William J. Lunkes and James A. Lunkes, (collectively the "Debtors") appeal decisions by the Bankruptcy Court for the Northern District of Illinois (the "bankruptcy court") sustaining objections by Chapter 7 Trustee Frances Gecker ("Gecker") to an exemption claimed by each of the Debtors. The Debtors' appeals have been consolidated before this Court. The Debtors challenge the bankruptcy court's findings that the John W. Lunkes Trust (the "Trust") is not a spendthrift trust, and that their interests in the Trust are therefore not exempt from their respective bankruptcy estates. For the reasons discussed below, the Court affirms the decision of the bankruptcy court.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Court adopts the relevant facts as set forth by the bankruptcy court. *See* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .").

On March 1, 2002, the Debtors' father, John W. Lunkes ("John"), established the Trust. The Trust's assets included two pieces of commercial real property located at 2435-2457 West Irving

Park Road, Chicago, Illinois and 2452-2458 West Irving Park Road, Chicago, Illinois (collectively the "Commercial Properties") and a residential property at 510 North Saint Mary's Road, Libertyville, Illinois (the "Residence"), as well as certain other personal property. John was the settlor, trustee, and beneficiary of the Trust.

John initially established the Trust for the purpose of providing regular income payments to himself during his lifetime. According to the terms of the Trust, if John became unable to manage his affairs, a successor trustee could use the Trust's principal for the support and care of John and Marguerite Reichert ("Reichert"). Upon John's death, the successor trustee was to pay all of John's outstanding debts, distribute the principal of the Trust equally among his five children, establish a new trust to provide for Reichert's support and allow her to live at the Residence rent-free, negotiate a sale of the Commercial Properties to certain designated persons, create another separate trust for minor children if necessary, and require the beneficiaries to pay proportionate shares of the federal estate tax.

John died on July 6, 2003, at which time his daughter Patricia Lunkes ("Patricia") became the successor trustee of the Trust. John was survived by all five of his children: the Debtors, Patricia, Donna Bober, and Michael Lunkes ("Michael") (collectively "the Beneficiaries"). According to the terms of the Trust, after paying John's debts and creating new trusts (if necessary) for Reichert and any minor children, Patricia should have distributed the remaining principal of the Trust to the Beneficiaries. However, before the distribution occurred, a dispute arose among the children regarding the sale of the Commercial Properties. The Trust had given John's three sons an option to purchase the properties for 50% of their appraised value, but required that payment be made within nine months after providing notice of intent to purchase. Michael provided such notice,

2

but did not make payment with nine months. Thereafter, Michael filed a lawsuit in the Circuit Court of Cook County, Illinois against Patricia and the other beneficiaries. The suit concerns whether Patricia failed to make a distribution as required by the Trust, and whether she breached her fiduciary duty to the beneficiaries in her capacity as successor trustee. As of the time of the bankruptcy court's decision, the properties had not been sold and no distributions of Trust principal had taken place.

On January 9, 2009, the Debtors filed voluntary chapter 7 bankruptcy petitions. In their bankruptcy filings, each Debtor listed his inheritance in the Trust, but claimed an exemption under 11 U.S.C. § 541(c)(2), claiming that the inheritance constituted a spendthrift trust. Gecker, the chapter 7 Trustee, challenged the Debtors' claimed exemptions on the grounds that the inheritances are not spendthrift trusts and are not entitled to exemptions under the U.S. Bankruptcy Code.[1]

The bankruptcy court agreed with Gecker, finding that the Trust does not constitute a spendthrift trust under Illinois law. The Court held that the Trust is not a spendthrift trust because the Debtors had an immediate right to a distribution under the Trust upon their father's death, notwithstanding the fact that the Debtors had not yet received any distribution from the Trust. As a result, the bankruptcy court concluded that the Debtors' interests in the Trust were not exempted from their bankruptcy estates. The Debtors filed a Motion for Leave to Appeal [the] Order Denying Exemption, arguing for the first time that there are two classifications of assets within the Trust—personal property and the Commercial Properties—each governed by different sections of

---

[1] Assets held in spendthrift trusts are technically excluded from a debtor's bankruptcy estate, rather than part of the estate but exempted from the list of assets that may be reached by creditors. The parties did not argue this issue below and do not do so here, and the end result would be the same—if the Trust is a spendthrift trust, Debtors' creditors may not reach it. The Court merely notes for the sake of clarity that "Congress excluded from the debtor's estate spendthrift trusts under 11 U.S.C. § 541(c)(2)," rather than including them in the estate but then exempting them from access by creditors. *Matter of Yonikus*, 996 F.2d 866, 870 (7th Cir. 1993).

3

the Trust and only one of which is a spendthrift trust. The Debtors asserted that although they did have a right to immediate distribution of certain assets from the Trust following John's death, the Commercial Properties were not among those assets, as they were governed by different sections of the Trust and not subject to compelled distribution. The Debtors make that same argument on appeal.

## STANDARD OF REVIEW

This Court has jurisdiction to review final bankruptcy court decisions. 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001 and 8002. Orders granting or denying exemptions are appealable as final judgments under 28 U.S.C. § 159(d). *See Matter of Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993). On appeal, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *See id.*; *In re McCoy*, 02 C 3258, 2002 WL 1611588, at *2 (N.D. Ill. July 22, 2002) (Holderman, J.). Whether a debtor is entitled to a bankruptcy exclusion or exemption is a question of law. *Matter of Yonikus*, 996 F.2d at 868.

## DISCUSSION

When a debtor files for bankruptcy, nearly all of his or her property becomes the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a) (stating that the debtor's estate includes all of the debtor's legal and equitable interests in property); *Matter of Yonikus*, 996 F.2d at 869. Courts have defined the term "property" broadly, and it includes "contingent interests in future income." *Matter of Yonikus*, 996 F.2d at 869. Thus, even if the debtor has not yet received the benefit of the "property," it can be part of the debtor's bankruptcy estate. *Id.*; *In re Smith*, 189 B.R. 8, 10 (Bankr. N.D. Ill. 1995) (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)). Nevertheless, the bankruptcy code does allow debtors to keep some property out of the bankruptcy estate. For example, section

541(c)(2) of the bankruptcy code excludes from the bankruptcy estate property that is part of a valid spendthrift trust. 11 U.S.C. § 541(c)(2). Whether a trust is a valid spendthrift trust is a question resolved by "applicable nonbankruptcy law." *Id.*; *see also In re McCoy*, 274 B.R. 751, 761-62 (Bankr. N.D. Ill. 2002), aff'd *In re McCoy*, 2002 WL 1611588.

The parties agree that Illinois law governs whether the Trust at issue here is a spendthrift trust. The purpose of a spendthrift trust is to provide money for the care and maintenance of another person while protecting the trust from the beneficiary's incapacity or financial imprudence. *See Morter v. Farm Credit Servs.*, 937 F.2d 354, 356 (7th Cir. 1991); *In re Balay*, 113 B.R. 429, 437 (Bankr. N.D. Ill. 1990). A spendthrift trust often includes an anti-alienation clause, purporting to restrict the voluntary or involuntary transfer of funds from the trust. *See In re Balay*, 113 B.R. at 437. The inclusion of such a provision does not necessarily mean that the trust is a spendthrift trust; rather, to be a valid spendthrift trust under Illinois law, the beneficiary cannot have a right to or control of any immediate distribution from the trust. *See id.* Illinois courts ask the following questions when determining whether a valid spendthrift trust exists: (1) does the trust restrict "the beneficiary's ability to alienate and the beneficiary's creditors' ability to attach the trust corpus[?]"; (2) was the trust self-settled—that is, did the beneficiary create the trust—and did he retain the right to revoke it?; and (3) does the beneficiary have "exclusive and effective dominion and control over the trust corpus, distribution of the trust corpus and termination of the trust[?]" *Matter of Perkins*, 902 F.2d 1254, 1257 (7th Cir. 1990); *see also In re McCoy*, 2002 WL 1611588, at *3.

The Debtors argue that upon John's death, a valid spendthrift trust was created for their benefit, if only with respect to the distribution of the Commercial Properties. Debtors raised the issue of a distinction between the Trust as a whole and the Trust with specific regard to the

5

Commercial Properties for the first time in their Motion for Leave to Appeal the bankruptcy court's Order, and make that argument again on appeal. The Court agrees with Gecker that this argument differs from the one the Debtors originally made before the bankruptcy court, which was that the Trust in its entirety was converted to a spendthrift trust upon John's death. As a general rule, "arguments not presented to the [bankruptcy] court are waived and cannot be raised for the first time on appeal." *Matter of Kroner*, 953 F.2d 317, 319 (7th Cir. 1992). Nevertheless, the Debtors' new argument that only the Commercial Properties are protected by a new spendthrift trust implicitly concedes than any other assets remaining in the Trust corpus but not yet distributed are not exempted from their estates and are reachable by their bankruptcy creditors. Therefore, instead of looking at the Trust as a whole, the Court may focus its analysis on whether the provision governing the Commercial Properties constitutes a spendthrift trust.

The parties agree that the Trust at issue here contains an anti-alienation clause. The Trust states that "[t]he interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered." (John W. Lunkes Decl. of Trust at 8.)

The parties also agree that the Trust was not a spendthrift trust while John was still alive, because Illinois law does not allow self-settled spendthrift trusts. *See* 35 ILCS 5/2-1403; *In re Simon*, 170 B.R. 999, 1002 (Bankr. S.D. Ill. 1994) (collecting cases). Debtors do not provide any authority to support the proposition that a trust that is not—and cannot be—a spendthrift trust at the moment of creation can convert itself into a spendthrift trust at a later date. Instead, they appear to argue that once their option to buy the Commercial Properties lapsed, a new trust was effectively created that left control of the Commercial Properties in the hands of Patricia, the successor trustee.

6

Because this trust was not self-settled by the Debtors, it would be eligible for spendthrift trust status if it otherwise complied with the requirements of Illinois law.

When construing a trust, Illinois courts apply the same rules that apply when construing a will. *In re McCoy*, 274 B.R. at 763. The objective in construing a trust is to determine the settlor's intent from the trust as a whole, which the court will effectuate if it is not contrary to public policy. *Id*. at 763-64.

Here, it is clear from review of the Trust instrument as a whole that John intended for several events to occur upon his death. The Trust instrument provides for the creation of a new Trust, "Trust A," with the stated purpose of allowing Reichert to live in the Lunkes Residence rent-free "until she is unable or unwilling to do so" and to provide for the maintenance of the Residence. (John W. Lunkes Decl. of Trust at 5.) This provision, in combination with the anti-alienation clause, created a new spendthrift trust—one in which the income from a designated principal would go to provide for the support of a given beneficiary, but over which the beneficiary would have no control and no access to the principal. (*See id*.) The Trust instrument also provided that if any share of the Trust estate was distributable at the time of John's death to an individual under 21 years of age, a spendthrift trust could be created by the successor trustee that would allow the income or the principal of the trust to be used, at the trustee's discretion, for the support, maintenance, and education of the minor beneficiary. (John W. Lunkes Decl. of Trust at 6-7.) This, too, represents John's intention to allow for the creation of a new spendthrift trust with a designated beneficiary.

With respect to the Commercial Properties, the Trust instrument provides that certain "designated persons" would have an option to purchase the properties at 50% of their appraised market value. (John W. Lunkes Decl. of Trust at 6.) Notice of intent to exercise the purchase option

7

had to be given to the successor trustee within thirty days of notification by the trustee of the right to purchase, and payment for the real estate had to be concluded no more than nine months after exercise of the purchase option. (*See id.*) There is no provision, as in the case of the trusts for Reichert and any minor beneficiaries, allowing for the creation of a new spendthrift trust to be created in the event that none of the designated persons successfully exercised the purchase option. Most importantly, there is no provision, and no evidence of any intent on John's part, to create a new trust in which the Commercial Properties would be held for the benefit of any designated person or persons, and over which control would be exercised by the successor trustee alone. There is no indication that John was concerned with protecting the principal of a new trust from his heirs' financial imprudence or incapacity, or that he intended Patricia to have discretionary control over the distribution of income from the properties or the proceeds from their sale.[2] Such provisions would be necessary for the creation of a new spendthrift trust encompassing the Commercial Properties. *See Matter of Perkins*, 902 F.2d at 1257. In the absence of any such provision for the conversion of the Commercial Properties into the protected principal of a new trust, the properties must be considered part of the balance of the Trust estate—a balance to which the Debtors had an absolute right of distribution beginning at John's death. As noted by the bankruptcy court, it does not matter that the mandatory distribution has yet to occur; it is only relevant that the Debtors had an immediate right to distribution of the Trust corpus upon John's death.

A trust cannot be a valid spendthrift trust "'[i]f the beneficiary is entitled to have the principal conveyed to him immediately' . . . ."). *In re McCoy*, 274 B.R. at 763 (quoting Restatement

---

[2] Debtors argue that certain "environmental provisions" in the Trust, such as those addressing abatement of any potential hazards, reflect an intent for the properties to be held in trust for an extended period of time. There is no indication that these provisions were intended to provide the successor trustee with control over the property for any more than the period envisioned by the purchase option, however.

8

(Second) of Trusts § 153(2)). A bankruptcy estate is entitled to take debtor's interest in that portion of a trust, spendthrift or otherwise, that the debtor has an absolute right to receive. *See In re Rolfe*, 34 B.R. 159, 161 (Bankr. N.D. Ill. 1983). Because the Commercial Properties did not become the corpus of a new spendthrift trust after the purchase option lapsed, they are only part of the established Trust created by John Lunkes and subject to immediate distribution upon his death. Thus, they, and the Trust of which they are a part, cannot be excluded from the Debtors' bankruptcy estates.

## CONCLUSION AND ORDER

Debtors argue on appeal that the Commercial Properties, if not the Trust corpus as a whole, are held in a spendthrift trust that is exempt from inclusion in their bankruptcy estates. However, they have not shown any express or implied provisions in the Trust instrument that would support this argument, and the intent of the settlor, John Lunkes, was that the principal of the trust be distributed in equal shares to his children upon his death. Because the Debtors have an immediate right to distribution of the Trust's assets, it is not a valid spendthrift trust under Illinois law.

The decision of the bankruptcy court sustaining the trustee's objection to the exemption of the Trust from the Debtors' bankruptcy estates is affirmed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 29, 2010